

In The
Court of Appeals
Seventh District of Texas at Amarillo

_____

No. 07-18-00314-CV
_____

IN THE INTEREST OF M.R., A CHILD

_____

On Appeal from the 84th District Court
Ochiltree County, Texas
Trial Court No. 14,410, Honorable Curt Brancheau, Presiding

_____

January 4, 2019

MEMORANDUM OPINION

Before CAMPBELL and PIRTLE and PARKER, JJ.

Appellee the Texas Department of Family and Protective Services sought termination of the parental rights of the father and the mother to their daughter, M.R.[1] Trial of the final hearing was to the bench over two settings in July and August 2018.

During the final hearing, the mother's affidavit of relinquishment was received in evidence. At the conclusion of the evidence the trial court rendered a final order terminating the parental rights of the father and the mother and appointing the Department

---

[1] We use these party designations to protect the privacy of the child. *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2018); TEX. R. APP. P. 9.8(b).

M.R.'s permanent managing conservator. The father has appealed, challenging only the trial court's best-interest finding. We will overrule the father's issue and affirm the final order of the trial court.

## Background

The predicate grounds found by the trial court to warrant termination of the father's parental rights included endangering conditions, endangering conduct, constructive abandonment, and failure to comply with a court order establishing actions necessary for return of the child. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D),(E),(N), & (O) (West Supp. 2018).

Evidence supporting the court's predicate-ground findings begins with the Department's placement of M.R., then seven years old, in a safety placement after investigation of an allegation of neglect. M.R. and her parents were found occupying an unkempt house lacking running water. The parents' drug screens were positive. A Department conservatorship worker agreed in testimony that the child's parents were not providing her basic necessities.

On June 7, 2017, the Department filed its Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship regarding M.R., and was appointed her temporary managing conservator on June 19, 2017, following an adversary hearing.

The Department prepared a family service plan for the parents. It was reviewed with the father and made the order of the court. The worker testified the father did not complete his service plan, and characterized the parents' efforts as "very minimal." She

said he did not complete counseling, remain drug-free, or maintain housing or employment. The father testified he attended AA meetings. He also completed a psychosocial evaluation and an online parenting class. The worker said, however, that the father did not follow the evaluation's recommendations.

The father was arrested in November 2017 for possession of methamphetamine. He pled guilty to the state-jail felony offense, and was sentenced to time served in the county jail. Between late November 2017 and the time of his release in early April 2018, his incarceration hindered his ability to complete his service-plan requirements.

In May 2018 drug tests, the father produced a negative urinalysis, but a hair-strand test was positive for an unspecified substance. At trial, the father attributed the positive test result to methamphetamine users at a residence where he was staying. The worker testified to other occasions on which the parents gave excuses for their failure to take requested drug tests.

From the safety placement M.R. was moved to a shelter in Amarillo and then a foster home nearby. The father's supervised visitation was scheduled for a town nearer the father's residence, but the father did not make the visits, sometimes claiming he had to work or had no transportation. The father last saw M.R. in September 2017.

M.R.'s placement was later moved to a therapeutic foster home in the San Antonio area. According to the worker, this was the only available placement in Texas able to accept M.R. In the placement, M.R. is undergoing counseling for her inappropriate masturbatory behavior. The worker said, M.R. is "a really sweet girl, but she does have the sexually inappropriate behaviors." She has "made progress."

3

The worker said the father did not request telephone contact with M.R. and did not send her cards or gifts. The father testified no one told him he was allowed to contact M.R. while she was in the Department's care.

There was evidence that during the pendency of the case the father lived with a friend and at a motel. He testified he no longer lived with the mother and was unaware of her whereabouts. He moved to Amarillo after his release from jail and said he was "sub-renting" a house in Amarillo with another person. He agreed his living arrangement was not stable and said he lacked transportation. He had obtained employment with a contractor for the city of Amarillo.

Evidence showed M.R.'s only relatives to express any interest in her adoption were the mother's mother and step-father. But they removed themselves from consideration.

Analysis

In his brief, the father concedes the Department produced clear and convincing evidence of at least one of the predicate grounds alleged. He does not challenge the sufficiency of any of the predicate grounds found by the trial court. He argues, however, there was no evidence or at least factually insufficient evidence to support the trial court's best-interest finding.

The standards for appellate review of the proof presented to meet the Department's burden of clear and convincing evidence are described in *In re K.M.L.,* 443 S.W.3d 101 (Tex. 2014) and *In re K.V.,* No. 07-16-00188-CV, 2016 Tex. App. LEXIS 11091 (Tex. App—Amarillo Oct. 11, 2016, no pet.) (mem. op.). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of

fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (West 2014); *In re C.H.,* 89 S.W.3d 17, 25-26 (Tex. 2002).

To assess the trial court's best-interest determination, we may consider the factors itemized in *Holley v. Adams,* 544 S.W.2d 367 (Tex. 1976).[2] While the *Holley* "listing is by no means exhaustive, [it] does indicate a number of considerations which either have been or would appear to be pertinent." *Holley,* 544 S.W.2d at 372.[3] "The absence of evidence about some of these considerations would not preclude a fact-finder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *In re C.H.,* 89 S.W.3d at 27. In some circumstances, evidence of even one *Holley* factor may be sufficient. *Jordan v. Dossey,* 325 S.W.3d 700, 729 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (citing *In re C.H.*, 89 S.W.3d at 27). A court may fairly measure a parent's future conduct by his past when determining whether termination is in a child's best interest. *In re C.V.,* 531 S.W.3d 301, 308 (Tex. App.—Amarillo 2017, pet. denied) (citing *In re O.N.H.,* 401 S.W.3d 681, 684 (Tex. App.—

---

[2] The *Holley* factors are: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interests of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley,* 544 S.W.2d at 371-72.

[3] *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (citing Family Code section 263.307 ["Factors in Determining Best Interest of Child"] and *Holley* as providing factors for consideration "when determining whether termination of parental rights is in the best interest of the child" and also referencing Family Code section 153.131(b) which provides "a strong presumption that the best interest of a child is served by keeping the child with a parent").

San Antonio 2013, no pet.)).  The best-interest analysis focuses on the best interest of the child and not the parent.  *In re C.V.,* 531 S.W.3d at 307.

We begin by noting that the unchallenged evidence supporting the father's commission of endangering conduct and constructively abandoning M.R. strongly support the court's best-interest finding.  *See In re C.H.*, 89 S.W.3d at 28 (same evidence may be probative both of predicate grounds and best interest).

With regard to other factors, M.R. was almost age nine by the time of final hearing but no evidence of her desires was presented.  According to the worker, M.R. missed her parents and frequently mentioned them but the worker could not say whether M.R. was interested in having a telephone conversation with them.  We have noted evidence of M.R.'s apparent sexual acting-out behavior.  She was placed in a therapeutic foster home and in counseling.  According to the worker, the prospect of M.R. remaining in this facility until an adoptive family is located is "realistic."  There was suggestion in the testimony of the existence of potential adoptive parents.  No relative was interested in adoption.  M.R.'s mother relinquished her parental rights.

By the time final hearing concluded, some eleven months had passed since the father last saw M.R.  While her relocation to the San Antonio area made personal visits with the father more difficult, there was no evidence the father requested assistance to arrange a visit.  Nor does it appear the father visited, or otherwise contacted, his daughter before her transfer to San Antonio.  The father was unable to recall in testimony that the court previously ordered supervised visitation.  The court also heard the father acknowledge he did not attempt communication with his daughter even through cards or

by telephone, and dismiss his lack of effort by merely asserting that contacting her during the case would not have been "plausible."

The court could have seen the father's efforts to complete the services required for return of M.R. as half-hearted at best. While in jail, there was no evidence he requested assistance with his services from the worker, who visited him in jail, or his court-appointed attorneys in the criminal case or the Department's case. The court also had reason to doubt the father's resolve to distance himself from drug use. By the father's own testimony, even after his release from jail, he had close association with individuals using methamphetamine. Although the father testified he was working to improve his situation, his housing and transportation remained unstable at the time of trial.

As factfinder, the trial court was the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *In re H.E.B.,* No. 07-17-00351-CV, 2018 Tex. App. LEXIS 885, at *5 (Tex. App.—Amarillo Jan. 31, 2018, pet. denied) (mem. op.). It was authorized to believe some, all, or none of a witness's testimony. *Id.* Significantly, the father's testimony contains no mention of the child's needs or his plans to meet her needs. Considering all the evidence of the best interest factors in the light most favorable to the trial court's finding, we conclude a reasonable trier of fact could have formed a firm belief or conviction that termination of the father's parental rights was in the child's best interest. *See In re K.M.L.*, 443 S.W.3d at 112-13, 116 (legal sufficiency standard). And, viewing all the evidence in a neutral light, we conclude that the disputed and undisputed evidence favoring and disfavoring the finding permitted a reasonable factfinder to form a firm belief or conviction that termination was in M.R.'s best interest. *See In re A.B.*, 437 S.W.3d 498, 502-03 (Tex. 2014) (factual sufficiency standard).

Hence, the evidence supporting the court's finding that termination of the father's parental rights was in the best interest of M.R. was legally and factually sufficient. *See Holley,* 544 S.W.2d at 371-72. We accordingly overrule the father's appellate issue and affirm the trial court's final order of termination.

James T. Campbell
Justice
